UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL BAEZ<br><br>　　Plaintiff,<br><br>v.<br><br>ACCOUNT RECOVERY SOLUTIONS, LLC, PICCIONE RINKER MANAGEMENT, and CAPITAL LINK MANAGEMENT<br><br>　　Defendants. | CIVIL ACTION<br><br>COMPLAINT 1:18-cv-01842<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** Daniel Baez ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Account Recovery Solutions, LLC ("ARS"), Piccione Rinker Management, LLC ("PRM"), and Capital Link Management ("CLM") ( collectively referred to as "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692 and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FDCPA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

1

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

5. Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

6. Defendant ARS is a New York corporation and its New York Department of State Process entity is Legalcorp Solutions, LLC located at 11 Broadway, Suite 615, New York, New York 10004. ARS is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others using the mail and telephone, including consumers in the State of Illinois.

7. Defendant CLM is a New York corporation and its New York Department of State Process entity and designee is Denisa Piccione located at 455 Commerce Drive, Suite 7, Amherst, New York 14228. CLM is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others using the mail and telephone, including consumers in the State of Illinois.

8. Defendant PRM is a New York corporation. Its registered agent and New York Department of State Process entity is United States Corporation Agents, Inc. locates at 7014 13th Avenue, Suite 202, Brooklyn, New York 11228. PRM buys consumer debt and utilizes ARS and CLM as its debt collector to service defaulted debts owed or due or asserted to be owed using the mail and telephone, including consumers in the State of Illinois.

## FACTS SUPPORTING CAUSE OF ACTION

9. In December 2017, Plaintiff began receiving calls to his cellular phone from ARS seeking to collect an alleged debt ("subject debt") Plaintiff incurred through MacNeal Hospital.

10. Prior to the contacts, Plaintiff had no relationship with or knowledge of Defendants.

11. Plaintiff *never* provided his cellular telephone number to Defendant or otherwise expressly consented to Defendant's phone calls.[1]

12. In December 2017, Plaintiff answered a phone call placed by ARS and to Plaintiff's shock, he was informed that an officer was on the way to Plaintiff's home and Plaintiff would be sent to jail if Plaintiff refuses to pay the subject debt. Fearing grave repercussions, Plaintiff tendered payment in the amount of $100 to Defendants and was additionally charged a $5 processing fee.

13. Plaintiff requested information in writing from Defendants regarding the subject debt, as was his right under the FDCPA. Defendants denied Plaintiff's request.

14. Fearing future threats of jail time, Plaintiff agreed to a scheduled payment plan and the following payments were automatically withdrawn from Plaintiff's account:

　i. $278.82 and a $13.94 fee on December 18, 2017;

　ii. $278.82 and a $13.94 fee on January 16, 2018; and

　iii. $178.82 and a $13.94 fee on February 20, 2018.

15. After not receiving the requested documentation from Defendants, Plaintiff contacted his bank to cancel the card through which payments to the subject debt were made.

16. Upon cancelling the card, CLM sent Plaintiff a letter with the heading of "**RECEIPT OF FINAL PAYMENT FOR ACCOUNT PAID IN FULL.**" The letter, dated February 19, 2018, listed PRM as the current creditor, MacNeal Hospital as the original creditor, and reflected a balance of $0.

---

[1] Upon information and belief, Defendants obtained Plaintiff's cellular telephone number from a credit report in which Defendants accessed through a method known as "skip-tracing," whereby debt collectors obtain phone numbers by conducting inquiries upon consumer credit reports or other public record searches.

17. The letter further stated that "[t]here are no remaining obligations on the part of DANIEL BAEZ."

18. Although the letter was dated February 19, 2018, Defendants still withdrew a final payment on February 20, 2018 in the amount of $278.82 in addition to a $13.94 fee.

19. The letter was confusing in nature and contradicted the designation of the subject debt as it relates to Plaintiff.

20. The letter initially states that "the account has been *paid* in full." (emphasis added)

21. The letter then states "[t]his **Receipt of Final Payment** for account *settled* in full should be retained future reference." (emphasis added)

22. Plaintiff firmly believed that he had paid the subject debt in full, but Defendants confused Plaintiff as he is unsure as to whether the subject debt was satisfied in its entirety or if he would be deemed to have settled the subject debt for a lesser amount and would face consequences on his credit rating as a result.

23. Plaintiff was later told that he owed a total of about $878 towards the subject debt and only paid around $748. Since December 1, 2017, Plaintiff has paid a total of $883.28 to Defendants towards the subject debt.

24. Defendants intentionally harassed and abused Plaintiff through false threats of jail time for failure to pay the subject debt.

25. Defendants' harassing conduct has severely disrupted Plaintiff's daily life and general well-being as Plaintiff constantly feared serious consequences which were the result of ultimately baseless threats.

26. Concerned about the violations of his rights, Plaintiff was forced to seek the assistance of counsel to file this action to prevent Defendants from further harassment in the future, thus incurring costs and expenses.

### COUNT I – DEFENDANTS' VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

27. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

29. Upon information and belief, the subject debt that Defendants were attempting to collect arose primarily for family, personal or household purposes, and thus is an alleged "consumer debt" as defined by FDCPA §1692a(5).

30. ARS is a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

31. CLM is a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

32. PRM is a "debt collector" as defined by §1692a(6) because it regularly purchases debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

33. Defendants used the mail and telephone to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

34. Defendants violated 15 U.S.C. §§1692d, d(5), e(4), e(5), e(10), f, g, g(a)(1), g(a)(2), g(a)(3), g(a)(4), and g(a)(5) through its unlawful collection practices.

    a. **Violations of FDCPA §1692d**

35. Defendants violated §1692d by engaging in abusive, harassing, and oppressive conduct when they deceived Plaintiff into believing that he will be sent to jail in order to secure payment towards the subject debt

    **b. Violations of FDCPA §1692e**

36. Defendants violated §1692e(4) by stating that he will be sent to jail if he failed to make a payment towards the subject debt.

37. Defendants violated §1692e(5) by threatening Plaintiff with jail time and further stating that a police officer was on the way to Plaintiff's home to arrest him and that Plaintiff would have to make a payment towards the subject debt to prevent this from happening. Such threats employed by Defendants involved actions that legally cannot be taken against Plaintiff whether he paid the subject debt or not. Defendants have no authority to force Plaintiff into jail yet made the threat fully intending to coerce Plaintiff into making a payment towards the subject debt.

38. Defendants violated §1692e(10) by making false representations and employing deceptive means to induce Plaintiff into paying the subject debt. In order to secure immediate payment of the subject debt, Defendants led Plaintiff to fear for his freedom, thus driving Plaintiff to make a payment immediately.

    **c. Violation of FDCPA §1692f**

39. Defendants violated §1692f in that Defendants used unfair and unconscionable means to collect the subject debt by scaring Plaintiff with false threats of jail time for failure to pay the subject debt.

    **d. Violation of FDCPA §1692g**

40. Defendants violated §1692g by failing to send Plaintiff a 30-day validation notice within five days of Defendants' initial communication with Plaintiff which states:

      i. g(a)(1) the amount of the debt;

      ii. g(a)(2) the name of the creditor to whom the debt is owed;

      iii. g(a)(3) the right to dispute the debt within 30 days;

iv. g(a)4) the right to have verification or judgment mailed to Plaintiff; and

v. g(a)(5) that the name and address of the original creditor will be provided if the original creditor is different than the current creditor.

41. Upon information and belief, Defendants systematically attempt to collect alleged debts through harassing conduct and have no procedures in place to assure compliance with the FDCPA.

42. As stated above, Plaintiff was severely harmed by Defendants' conduct.

**WHEREFORE**, Plaintiff DANIEL BAEZ requests that this Honorable Court:
a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II – DEFENDANTS' VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

43. Plaintiff restates and reallages paragraphs 1 through 26 as through fully set forth herein.

44. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

45. Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e) respectively.

46. Defendants' collection activities to Plaintiff are "trade" and "commerce" as defined by 815 ILCS 505/1(f) of the ICFA.

47. Defendants are engaged in commerce in the State of Illinois with regard to Plaintiff and the subject debt. Defendants specialize in debt collection, which is an activity within the stream of commerce and utilized in their regular course of business.

48. Defendants violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice in inducing Plaintiff into paying the subject debt. It was unfair for Defendants to threaten Plaintiff with a visit from a police officer that would result in his arrest in order to secure payment towards the subject debt. Defendants' conduct only served to harass and intimidate Plaintiff into paying the subject debt.

### a. Unfairness and Deception

49. It was unfair and deceptive for Defendants to seek to collect the subject debt from Plaintiff through means of threats and harassment in order to induce him into making a payment on the subject.

50. It was unfair for ARS, acting behalf of all Defendants, to misrepresent to Plaintiff that an officer was coming to his home to arrest him if he failed to make a payment towards the subject debt.

51. It was unfair for Defendants to refuse to send to Plaintiff documentation regarding the subject debt. Rather than relying on written verification of the subject debt to secure payment, Defendants relied on threats of jail time to force payment and opted to withhold written proof of the subject debt's validity.

52. It was unfair for Defendants to perpetuate their misrepresentation by using deception to establish a payment schedule and withdrawing monthly payments from Plaintiff's account.

53. Moreover, Defendants' unfair conduct is against public policy because it needlessly subjects consumers to such harassing behavior.

54. Upon information and belief, Defendants systematically engages in such harassing conduct against consumers in Illinois in order to aggressively collect debts in default, or assumed to be in default, to increase their profitability at the consumers' expense.

55. Upon information and belief, administering such harassing actions against Illinois consumers is an unfair business practice willfully employed by Defendants and is done on a large scale.

56. Additionally, Defendants' unlawful and unfair debt collection efforts gives them an unfair competitive advantage over businesses that collect debts lawfully.

57. As alleged above, Plaintiff was substantially harmed by Defendants' misconduct.

58. An award of punitive damages is appropriate because Defendants' conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to Defendants' harassment.

**WHEREFORE**, Plaintiff DANIEL BAEZ requests that this Honorable Court:
   a. Enter judgment in Plaintiff's favor and against Defendants;
   b. Award Plaintiff his actual damages in an amount to be determined at trial;
   c. Award Plaintiff his punitive damages in an amount to be determined at trial;
   d. Award Plaintiff his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
   e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: March 13, 2018                              **Respectfully Submitted,**

/s/ Marwan R. Daher                                /s/ Omar T. Sulaiman
Marwan R. Daher, Esq.                              Omar T. Sulaiman, Esq. ARDC#6322837
*Counsel for Plaintiff*                            *Counsel for Plaintiff*
Sulaiman Law Group, Ltd                            Sulaiman Law Group, Ltd
2500 South Highland Avenue, Suite 150              2500 South Highland Avenue, Suite 150
Lombard, IL 60148                                  Lombard, IL 60148
Telephone: (630) 575-8181 ext. 109                 Telephone: (630) 575-8181 ext. 108
mdaher@sulaimanlaw.com                             osulaiman@sulaimanlaw.com